Argued September 22, affirmed October 28, reconsideration
denied December 23, 1975, petition for review denied
February 18, 1976

IN THE MATTER OF DONALD E. NESBITT,
ALLEGED TO BE A MENTALLY ILL PERSON.

STATE OF OREGON, *Respondent, v.* NESBITT
(No. 41-487, CA 4389), *Appellant.*
541 P2d 1055

*Robert F. Riede,* Metropolitan Public Defender, Portland, argued the cause and filed the brief for appellant.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

Donald E. Nesbitt appeals from an order made in a proceeding under ORS 426.070 through 426.170 committing him to the custody of the Mental Health Division as a "mentally ill person."[1]

An involuntary commitment proceeding is initiated by the filing of a petition ("Notice of Mental Illness") signed by two persons, the county health officer, or any magistrate, alleging that a mentally ill person is in need of treatment, care, or custody.[2] At the request of the circuit court to which the notice has been submitted, the community health program director or his designee then conducts an investigation to determine whether there is probable cause to believe that the person cited is, in fact, a "mentally ill person" within the definition of the statute;[3] this investigation should, where possible, include an interview with or examination of the allegedly mentally ill person in his home or some other familiar place, and may also include interviews with relatives, neighbors, and a personal physician *where* the consent of the allegedly mentally ill person is first obtained.[4] If, based upon the investigative report, the court finds probable cause to believe the individual cited is men-

---

[1]
"As used in ORS 426.005 to 426.390, unless the context requires otherwise:

"* * * * *

"(2) 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a) Dangerous to himself or others; or

"(b) Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety." ORS 426.005(2).

The circuit court specifically found that Mr. Nesbitt was "dangerous to others" as the result of a mental disorder.

[2] ORS 426.070(1).

[3] *Id.*

[4] ORS 426.070(2).

tally ill, a commitment hearing will be scheduled, the allegedly mentally ill person being served with a citation requiring his appearance at a stated time and place.⑤ If at any time following the filing of the notice the court has probable cause to believe that failure to take the allegedly mentally ill person into custody pending either the prehearing investigation or the hearing itself would pose an "imminent and serious danger" to that person or to others, it may issue a warrant of detention directing that the person be taken into custody immediately.⑥

Appellant's⑦ parents filed a "Notice of Mental Illness" on January 23, 1975, complaining that:

"* * * [Appellant] is extremely nervous and easily upset. He does not trust anyone and thinks people are spying on him and are going to harm him or vandalize his parents' property. He stays up most of the night, prowling around the house, then sleeps most of the day. He has been physically assaultive to both his mother and father, and both have had to go to the hospital for treatment of injuries. He has been destructive in our home and has broken up furniture, doors, locks, windows, patio doors, and cupboards * * *."

The same day they also completed an "Information Section" in which the following were listed as "present symptoms" of appellant's alleged mental illness:

"Threatens to beat up anyone who annoys him or shouts at him or even if you raise your voice. * * * Will not listen to reason. Extremely nervous. * * * Assaultive to father and mother * * *."

As a result of these submissions an order was is-

---

⑤ ORS 426.070(3).

⑥ ORS 426.070(5).

⑦ Although designated as "the person alleged to be mentally ill" in the proceedings below, Mr. Nesbitt will as a matter of convenience be referred to as "appellant" throughout this opinion.

sued, also on January 23, 1975, by the Multnomah County Circuit Court directing the community mental health program director to initiate a "probable cause" investigation. Compliance with that order was effectively thwarted, however, by appellant's lack of cooperation. The record indicates that when community mental health personnel attempted to contact appellant at his home "* * * He would skip out the back door * * * and [be] gone * * *" (testimony of appellant's mother).

On February 11, 1975, some 19 days after the filing of both the notice and the information section, the circuit court issued a "Warrant of Detention" ordering the Multnomah County Sheriff to take appellant into custody "pending [an] investigation to determine whether there is probable cause to believe that [he] is in fact mentally ill * * *," explicitly noting that it had found probable cause to believe that failure to take such action "would pose an imminent and serious danger" to appellant or to others. Taken into custody under the warrant on February 13, 1975, appellant was lodged in the Psychiatric Crisis Unit of the University of Oregon Medical School where mental health department personnel finally had an opportunity to conduct an investigatory interview. On the basis of that interview, as well as communications with appellant's parents, a commitment hearing was recommended as appropriate.

A citation apprising appellant of the information filed—including the specific facts upon which the notice had been based—and ordering him to appear for a hearing was delivered to him on February 14, 1975. Originally scheduled to take place that same day, the hearing was, at the request of appellant's assigned counsel, continued until February 18, 1975 at which time appellant was examined by Drs. Osborn and McGovern. As a result of their examinations, Drs.

Osborn and McGovern were unanimous in finding appellant to be a mentally ill person who would probably neither cooperate with nor benefit from a program of voluntary treatment.® Having observed the examinations conducted by Drs. Osborn and McGovern, reviewed the reports submitted by them, and listened to the testimony of appellant's parents, the court proceeded to issue the order of commitment from which this appeal has been taken.

Because, appellant contends, the circuit court did not have probable cause to believe that he posed an "imminent and serious danger" to himself or others at the time the warrant of detention was issued, his confinement between February 13, 1975 and February 18, 1975 was without a proper legal basis; assuming that criminal procedural safeguards are also applicable to civil commitment proceedings, appellant then asserts that all "evidence" obtained during his "illegal" detention—including hospital records and both the investigation report and the recommendation—should have been "suppressed" by the court below.

Arguing that a prehearing investigation and a recommendation are necessary prerequisites to the issuance of a citation, appellant concludes that had the investigation report and the recommendation been "supressed" as required the circuit court would have been without authority to order him to appear for the commitment hearing.

■ Assuming without deciding that appellant is

---

® Dr. Osborn specifically recommended that appellant be conditionally released for "out of home placement in a structured living arrangement * * *." Although she thought psychiatric medication might eventually be required, Dr. Osborn felt it was unlikely that appellant would cooperate with such a program. Dr. McGovern also recommended a conditional release "to enforce seeking outpatient care & to enforce staying away from [parents'] home * * *" but predicted that this course of treatment was likely to be "ineffective."

correct in suggesting (1) that his confinement under the warrant of detention was illegal because the circuit court acted without probable cause to believe that failure to do so would create a risk of "imminent and serious danger,"[9] and (2) that evidence acquired during that period of confinement should have been suppressed,[10] we conclude nonetheless that under the facts presented here the completion of the investigation and filing of the recommendation were not, in fact, necessary prerequisites to the initiation of the hearing. Under the circumstances of this case the circuit court might properly have relied solely upon the notice and the information section filed by appellant's parents as a basis for the issuance of the citation compelling appellant's appearance at the commitment hearing; the "suppression" of the investigation report and the recommendation would not, therefore, have deprived the court of authority to initiate that proceeding. While, under the terms of ORS 426.070, an investigation report and a recommendation are clearly anticipated as the means by which the required probable cause is generally to be established, the feasibility of such an investigation is, as noted above, dependent in large measure upon the cooperation of the indi-

[9] Prior to the issuance of the warrant of detention the only evidence before the circuit court upon which it might have relied in finding probable cause of "imminent and serious danger" were the notice and the information section filed on January 23, 1975; nothing in the record indicates that the court had been apprised of appellant's lack of cooperation during the interval leading up to the issuance of the warrant. It can be cogently argued that if the notice and the information section did, in fact, provide probable cause to believe that appellant posed an imminent and serious danger to himself or others a warrant of detention should have been issued on the date of their filing, and that their value as evidence of such a threat was substantially diminished by the 19-day delay which eventually preceded the issuance of the warrant.

[10] For a discussion of the exclusionary rule's applicability to noncriminal litigation, see State Forester v. Umpqua River Nav., 258 Or 10, 478 P2d 631, cert denied, 404 US 826 (1971); McCormick, Evidence 369, § 167 (hornbook series, 2d ed 1972).

vidual cited as "mentally ill." Because one alleged to be mentally ill cannot be required to submit to an interview with representatives of the community health director, and may, in fact, actually bar those representatives from contacting "relatives, neighbors, and physicians" by withholding his/her required consent, an investigation carried out without the cooperation of the individual charged cannot reasonably be expected to produce an informed recommendation or to aid the court in any substantial way in deciding whether it is reasonable to believe that the allegation of mental illness made by those filing the notice is actually warranted.

■ One member of the legislative committee of the Oregon Mental Health Association which assisted in drafting the legislation of which ORS 426.070 is a part has specifically noted that the prehearing investigation should not be required as an essential element of the commitment procedure where that investigation is hampered or blocked entirely by active resistance or uncooperative behavior on the part of the individual alleged to be mentally ill. In such cases, it is suggested, the circuit court may proceed to initiate a commitment hearing without the benefit of the recommendation that a preliminary investigation might be expected to produce *if* the "affidavits" of the persons responsible for the filing of the notice of mental illness are sufficient in and of themselves to give rise to the requisite probable cause.[®] The views of the commentator are well taken; requiring strict adherence to a procedure designed to ensure that an individual will only be subjected to the stress and trauma of a commitment hearing upon good cause would serve no useful purpose where such adherence has, in fact, been frustrated by the actions of the individual alleged to be mentally ill. Thus, where as here

---

[®] Kirkpatrick, *Mental Commitment in Oregon,* 53 Or L Rev 245, 249 (1974).

the prehearing investigation has been rendered ineffectual by the absence of cooperation on the part of the person alleged to be mentally ill, we hold that the circuit court may compel that individual's appearance at a commitment hearing *if* the notice and any accompanying "affidavits" state facts which would lead a reasonably prudent person to believe that the person cited is committable under the statute.

■ Appellant here takes the position, however, that even if the notice and the information section filed by his parents on January 23, 1975 were sufficient to give rise to probable cause to believe that he was mentally ill *at that time,* the 22-day delay prior to the issuance of the citation compelling his attendance at the hearing caused those documents to become "stale" and necessarily inadequate as a source of probable cause to believe that he was mentally ill at the later date.[20] Reversing defendant's conviction for possession of narcotics where evidence had been seized pursuant to a search warrant based upon an affidavit filed nearly one month after the affiant had actually observed contraband in defendant's home, the Supreme Court noted in *State v. Ingram,* 251 Or 324, 327, 445 P2d 503 (1968), that:

> "No permissible or reasonable time lapse can be specified. Whether the lapse of time is deemed to have been so long that [probable cause can no longer be inferred from the facts stated] * * * will depend upon all the circumstances * * *."

Appellant suggests that, due to the "dynamic nature" of mental illness, the probability that he remained dangerous to himself or others at the time the citation was issued could not have reasonably been

---

[20] Relying on cases in which lapses between the occurrence of the facts relied on and the issuance of a search warrant have been held to require the invalidation of the warrant, *see* State v. Ingram, 251 Or 324, 445 P2d 503 (1968); State v. Hoffman, 15 Or App 524, 516 P2d 84 (1973), Sup Ct *review denied* (1974).

inferred from the "facts" incorporated into the notice and the information section filed by his parents some 22 days previously. The documents filed by appellant's parents, which included allegations of physical assault and threatening behavior, would certainly have permitted a reasonably prudent person to conclude that appellant was a "mentally ill person" at the time of their filing; we believe that such a conclusion remained reasonable 22 days later. Although it would not be unreasonable to assume that an individual's mental condition might be subject to *some* change over a three-week period, it would be equally reasonable to believe that one suffering from a mental disorder which had rendered him dangerous to others at a given time might continue to be so afflicted some three weeks later—the lapse of three weeks did not serve to deprive the documents filed by appellant's parents of their value as a source of the probable cause which was necessary at the time the citation order was entered. Whether the facts would show beyond a reasonable doubt that appellant was a mentally ill person remained to be decided at the hearing itself.

■ Appellant finally contends that, had the hospital records obtained during his "illegal" confinement also been "suppressed," the evidence available to the court would have been insufficient to permit a finding of mental illness beyond a reasonable doubt. The records introduced added little to the evidence actually produced at the hearing itself through the examination of appellant and his parents; we are satisfied that evidence—including the examination reports of the participating physicians—establishes beyond a reasonable doubt that appellant was at the time of the hearing dangerous to others because of a mental disorder.

■ We hold our review in this proceeding is de novo. This is because ORS 426.070(1) provides that

a notice of mental illness is to be filed with "[t]he judge of any court having probate jurisdiction or, if the circuit court is not the probate court, the circuit court if its jurisdiction has been extended to include commitment of the mentally ill pursuant to ORS 3.275 * * *." ORS 111.105(1) provides in relevant part that where an appeal is taken to this court from a circuit court sitting in probate "* * * no issue * * * shall be tried again on appeal or otherwise reexamined in a manner other than those appropriate to issues determined by a court of record with general jurisdiction in law and equity." This court has consistently characterized probate proceedings as "substantially" suits in equity. On appeal such cases are "tried anew" (ORS 19.125) in the fullest sense with the findings of the trial court being given no weight except with regard to issues turning on witness credibility. *Hannan v. Good Samaritan Hosp.*, 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971). *See Carlton v. Wolf*, 21 Or App 476, 535 P2d 119 (1975); *Sheppard v. Kartes*, 19 Or App 567, 528 P2d 88 (1974); *Whitteberry v. Whitteberry*, 9 Or App 154, 496 P2d 240 (1972); *Nease v. Wilson, Clark*, 6 Or App 589, 488 P2d 1396, Sup Ct *review denied* (1971); *Nelson v. O'Connor*, 3 Or App 215, 473 P2d 161 (1970).

Therefore, as a finding made by a circuit court sitting in probate, the question of whether an individual is, in fact, committable as a mentally ill person is one which we feel compelled to review de novo. *See State v. O'Neill*, 21 Or App 710, 536 P2d 552, Sup Ct *review allowed* (1975). As we noted above, we are satisfied the evidence found in this record establishes beyond a reasonable doubt that appellant was a "mentally ill person."

Affirmed.