Argued September 22, reversed November 3, 1975

In the Matter of John K. Stephens, alleged to be a
mentally ill person.

STATE OF OREGON, *Respondent,* v.
STEPHENS (No. 41-532, CA 4390), *Appellant.*

541 P2d 1052

*Robert F. Riede,* Metropolitan Public Defender, Portland, argued the cause and filed the brief for appellant.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him

on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY aond FOLEY, Judges.

LANGTRY, J.

John K. Stephens appeals from an order declaring him to be a mentally ill person[1] and committing him to the custody of the Mental Health Division under the provisions of ORS 426.070 through 426.170.

As a consequence of his failure to take medication prescribed for an acute hypothyroid condition, appellant[2] became seriously ill on January 28, 1975, at which time he was admitted to the University of Oregon Medical School in a "near myxedema coma." Some ten days later, while appellant remained hospitalized, a "Notice of Mental Illness"[3] was filed in the Multnomah County Circuit Court by two of his physicians who alleged that

"* * * he refuses to take medication for his hypothyroidism when he leaves the hospital. His memory and judgment are badly impaired as part

---

[1]
"As used in ORS 426.005 to 426.390, unless the context requires otherwise:
"* * * * *
"(2) 'Mentally ill person' means a person who, because of a mental disorder, is either:
"(a) Dangerous to himself or others; or
"(b) Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety." ORS 426.005(2).
The state concedes that appellant is dangerous to neither himself nor others.

[2] Although designated "the person alleged to be mentally ill" in the court below, Mr. Stephens will be referred to as "appellant" throughout this opinion as a matter of convenience.

[3] ORS 426.070(1).

of an organic brain syndrome caused in part by his hypothyroidism and alcoholism. He has had several hospital admissions because he has neglected his health to a dangerous degree * * *."

Following an investigation by the community mental health program director, an order providing for a commitment hearing was issued on February 19, 1975.[4] At that hearing appellant was, at the request of the court, examined by Dr. King and Mr. Fosterling, MSW, both of whom had previously reviewed hospital records relating to appellant's care and treatment, which records indicated a history of alcoholism and hypothyroidism. Although, due to his physically weakened condition, appellant was confined to a wheelchair at the time of the hearing, the record indicates that he was alert, attentive, and reasonably responsive throughout the examination.

■■ After questioning appellant about his understanding of why he had been brought into court, his source of income, his means of providing for himself, and his willingness to take his medication if released, each of the appointed examiners submitted a report incorporating his "findings" and "recommendations." For his part, Mr. Fosterling concluded that appellant was not, in fact, a mentally ill person under the statute; he did, however, recommend that some steps be taken to provide appellant with an "improved living situation." Dr. King, on the other hand, found that appellant was, as a consequence of a mental condition characterized as "organic brain syndrome," a mentally ill person; he too declined, however, to recommend that appellant be committed, suggesting that instead he be discharged and referred to the Public Health Department for nursing care as necessary.[5] The

[4] ORS 426.070(1)-(3).

[5] ORS 426.120 provides that the report of a person appointed to conduct the examination shall, if a finding of mental illness

ambivalence which marked these reports was exposed more starkly in a dialogue between the court and the examiners which immediately preceded the entry of the commitment order:

"THE COURT: Let me ask Dr. King: Do you really think we can let him go out of here? He can't even walk.

"DR. KING: I don't see how we can do otherwise. He has done it before. He should have some more medical care but I don't think it is on the basis of commitment.

"THE COURT: Doesn't he need some structured living situation?

"DR. KING: He needs it but he will never get it.

"THE COURT: What do you think about the situation, Mr. Fosterling?

"MR. FOSTERLING: I am having an awfully hard time with it. I do think he needs some kind of structured living situation. I don't know that it is necessarily a mental hospital kind of situation. He certainly needs medical care.

"* * * * *

"DR. KING: I have a feeling that the responsibility lies with the doctors who are looking after him at the Medical School. He shouldn't be here.

"THE COURT: Maybe it is a dumping operation. He doesn't know if he has a hotel or what the address is, and he apparently can't walk.

"* * * * *

"MR. FOSTERLING: I am having a hard time to make a decision either way, I am sorry.

is made, "advise the court whether in the opinion of the examiner the mentally ill person would cooperate with and benefit from a program of voluntary treatment." Dr. King's report did not include any such opinion.

"THE COURT: I understand the frustration."

We also understand the frustrations encountered by those sincerely seeking to aid those in the position of appellant; our review of the record[6] leads us to conclude, however, that the equivocal nature of the evidence found therein is insufficient to warrant a finding beyond a reasonable doubt that appellant is, *because of a mental disorder,* unable to provide for his basic personal needs.[7] Although there is absolutely no doubt that appellant requires some social assistance and would profit greatly from an "improved living situation," the record before us is not adequate to support a finding of mental illness.

Reversed.

---

[6] We regard our review to be de novo in these cases. *See* State v. Nesbitt, 23 Or App 202, 541 P2d 1055 (1975).

[7] As noted above, ORS 426.005(2)(b) specifically provides that in order to be committed as a mentally ill person an individual must, because of a mental disorder, be "[u]nable to provide for his basic personal needs *and * * * not receiving such care as is necessary for his health and safety.*" (Emphasis supplied.) At the time of the hearing appellant had, for the preceding three weeks, been receiving apparently adequate care from the staff at the University of Oregon Medical School; although we have been cited no statute which would obligate the staff to continue providing such care in the future, the record does not indicate whether or not the care would have been discontinued had appellant been "discharged" by the circuit court.