Argued August 25, reversed and remanded September 27, 1976

# In the Matter of Caroline Alexander, alleged to be a Mentally Ill Person.
## STATE OF OREGON, *Respondent,*
### *v.*
## CAROLINE ALEXANDER, *Appellant.*
### (No. 42-228, CA 5616)

554 P2d 524

*Elden M. Rosenthal,* Portland, argued the cause and filed the briefs for appellant.

*Karen H. Green,* Certified Law Student, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer, Judge, and Sloan, Senior Judge.

SLOAN, S. J.

## SLOAN, S. J.

This is a mental illness commitment proceeding pursuant to ORS ch 426.[1] The Probate Department for Multnomah County found appellant to be mentally ill and ordered her committed to the Mental Health Division. She appeals.

There are four assignments of error. We detail discussion in only one, i.e., that the evidence is insufficient to find that appellant is mentally ill beyond a reasonable doubt. ORS 426.130. We agree. Even though this is decisive of the case, later mention will be made of the other assignments with the hope of avoiding similar problems in future cases.

ORS 426.005(2) defines a mentally ill person as one "* * * who, because of a mental disorder, is either:

"(a) [d]angerous to himself or others; or

"(b) [u]nable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

A court must be certain beyond a reasonable doubt that a person is mentally ill before that person may be committed. ORS 426.130.

Before we examine the evidence in this particular case, it is necessary to discuss, generally, how to apply the reasonable doubt standard in the context of a mental illness hearing.

It is difficult enough, as in the criminal cases, to identify when the proof of an alleged past act can be said to reach a level of beyond a reasonable doubt. It is, and will be, doubly difficult in the mental illness cases because of the necessity of predicting future conduct. And, in most cases, there will be no overt act involved that may persuasively indicate the likelihood of repet-

---

[1] In *State v. Nesbitt,* 23 Or App 202, 541 P2d 1055 (1975), Sup Ct *review denied* (1976), and in Kirkpatrick, *Mental Commitment in Oregon,* 53 Or L Rev 245 (1974), the procedures delineated by ORS ch. 426, following the substantial amendments to that chapter in 1973, are detailed. There is no need for repetition.

ition. Based upon the cases that have thus far reached this court, what will be offered is testimony by lay witnesses of an individual's past conduct coupled with an interpretation of that conduct and of their observations by the professional examiners (ORS 426.110 and 426.120) and a prediction of not only his future conduct but also the effects which that conduct will have on himself and on those around him. It is not an overstatement to say that such a prediction will rarely, if ever, be completely free from doubt. Psychopathological predictions are simply not, as yet, that exact. *See* Kirkpatrick, *Mental Commitment in Oregon,* 53 Or L Rev 245 (1974); Rosenhan, *Psychiatric Diagnosis,* 13 Santa Clara L Rev 379 (1973); *Developments in the Law—Civil Commitment of the Mentally Ill,* 87 Harv L Rev 1190 (1974).

■ This is not to say that proof beyond a reasonable doubt is impossible in a civil commitment proceeding. The 1973 amendments altering commitment procedures were designed to enhance procedural safeguards in civil commitment hearings; they certainly were not designed to eliminate completely all civil commitments.

The element of predictability is involved only in the requirement of dangerousness to self or others. The ability of one to care for himself requires a finding of existing conditions. This is reflected in a letter of J. D. Bray, M. D., to the Honorable Elizabeth W. Browne, Chairman, Senate Committee on Judiciary, Exhibit A to Senate Judiciary Committee Hearings on Senate Bill 510, April 4, 1973, pages 1-2:

> " '* * * [O]r are unable to provide for their basic personal needs and are not receiving such care as is necessary for their health or safety. Inclusion of the latter concept allows commitment of some persons, primarily the elderly and those with chronic psychoses or organic brain disease, who are disoriented, out of contact with reality, or unable to make decisions about their basic needs because of their mental condition. It does not include the mentally retarded or persons who are unable

to care for their basic needs but are being properly cared for by others. ' * * *" *State v. O'Neill,* 274 Or 59, 69, n 9, 545 P2d 97 (1976).

■ We hold that the letter of Dr. Bray expresses the legislative intent in respect to ORS 426.005(2)(b).

■ ■ Even though psychopathological prediction is far from an exact science, it is the only professional guidance available. Obviously, the statute contemplates that the professional examiners' findings will be an essential, but not a conclusive, basis for a finding that mental illness does or does not exist. What is needed, then, is for the professional examiners to fully explain the facts and observations that led them to a conclusion. A statement by the examining doctors, as in the instant case for example, that the person has a "flat" appearance is meaningless without explanation. And, if the examiner merely states a conclusion that the person being tested is dangerous to himself or others, it is not adequate. The basis of that conclusion must be supported by facts supporting the conclusion.

The drastic change in the concept of a mental illness hearing may have been best and most simply described by Professor Kirkpatrick in his comprehensive article at 53 Or L Rev, *supra* at 262-63:

"* * * An allegedly mentally ill person with a significant probability of committing murder may be a more suitable candidate than an allegedly mentally ill person with an even higher probability of throwing rocks at street lamps. In any event, the legislature clearly has rejected the traditional philosophy applied to mental commitment proceedings of 'when in doubt, commit.' Under the new statute, if any reasonable doubt exists, an allegedly mentally ill person may not be committed."

■ Some further discussion is required about the word "dangerous" as it applies to the alleged mentally ill person or others. No fixed definition or delineation has been found of what evidence will prove that element beyond a reasonable doubt. No sudden burst of prescience in the authorities cited and in the many addi-

tional references in the cited authorities has revealed much more than a semantical exercise of substitution, one word for another. We believe that the determination must be on a case-to-case basis and will require, as above expressed, the diligence of the several professional disciplines involved to present and comprehensively analyze all relevant evidence.

In the present case the state has made no persuasive claim that appellant is unable to provide for her basic needs. The state's brief says that there is "some evidence" to sustain that contention but that there is "significantly more evidence" to prove she is dangerous to herself.

■ The lack of evidence supporting mental illness is further highlighted by the paucity of testimony that appellant is suffering from a mental disorder. One of the two examiners never stated, either in his testimony or in his examination report, what type of mental disorder appellant was suffering from. The other examiner did not testify as to the type of mental illness from which appellant suffered, but in his report he noted that appellant had "prob. schizophrenia, paranoid type." For emphasis we repeat that far more than these efforts are needed to apprise the court of the existence of mental illness. The examiners must detail the basis for their findings. It is again emphasized that it is not enough to say that an individual is probably schizophrenic. In addition, the reasons for that judgment must be supplied. Further, the actual and possible effects of the mental illness should be catalogued, with specific reference to the individual at hand.

Finally, the evidence below indicates that one of the examiners was uncertain as to whether appellant was suffering from a mental illness. The following passage is illustrative:

"Q (by Mr. Mutnick) Let me ask you this: When you write here under finding, Dr. Bennett, 'I find that the

person examined is a mentally ill person,' what does that mean?

"A   It means that based upon much less information than I would like to have but by my use of what I do have, that is my opinion.

"Q   What does 'mentally ill person' mean?

"A   I think it could be defined in this way, what I think of as a person who probably—a person who would have difficulty taking care of day-to-day care of oneself and might show impaired judgment.

"Q   Might show impaired judgment?

"A   Yes.

"Q   Does it mean to you that that person is dangerous to themselves or other people or unable to care for their basic needs in general?

"A   I would say yes.

"Q   Is that what you meant when you wrote that here?

"A   In part, yes. You have to remember, I feel I have much less information than I would like to have and yet I have to make an opinion.

"Q   You don't think that you have sufficient information to give an opinion?

"A   I have less than I would like to have to give an opinion.

"THE COURT:   That is not the question.

"DR. BENNETT:   I don't understand the question.

"THE COURT:   Do you have before you sufficient information which will allow you to form an opinion as to whether the person is mentally ill or not?

"DR. BENNETT:   Yes, I think so.

"Q   (by Mr. Mutnick) You are prepared to state under oath, based upon the information you received here today without having personally spoken to or examined Caroline Alexander, you would render a professional opinion that she is a mentally ill person, dangerous to herself and other people or unable to care for her basic needs?

"A   A qualified yes. I have spoken to her and observed her. You indicated that I did not."

In the instant case the only evidence that appellant is dangerous to others is that she once told her sister

that most people are killed by their children, while in the same conversation expressing extreme irritation with her father. No evidence was produced that appellant has ever repeated such "threats," or that she has ever assaulted or attacked anyone. *Compare State v. Nesbitt,* 23 Or App 202, 541 P2d 1055 (1975), Sup Ct *review denied* (1976). Her conduct at the hearing appeared unremarkable, save her claiming of the privilege against self-incrimination. Certainly much more than this is needed to establish that an individual is dangerous to others.

■ The evidence that appellant is dangerous to herself is almost as sparse. Appellant's sister testified that once appellant said that she would like to be dead. Appellant's sister further testified that she believed if appellant were living alone there might be a serious problem with suicide. There was also evidence that appellant trips over lamps, leaves refrigerator doors open, and has left a pan on the stove with the burner on high. Such evidence cannot help but leave us with considerable doubt. Much more certainty than this from the examiners is required to support a commitment order.

■ At the start of the hearing, a motion was made to dismiss the case because of the absence of appellant's mother. The refusal of the court to grant the motion is one assignment on appeal. The failure of one of the initiating petitioners to appear may jeopardize the state's evidence. It would also preclude use by the court or the examining physicians of any of the allegations contained in the affidavit of the missing person because ORS 426.095 requires confrontation with the witnesses. But the absence of the person would not require a dismissal.

■ Another assignment charges error in permitting the examining doctors to utilize appellant's refusal to talk or testify as evidence of mental illness. The extent that the doctors may have relied on this refusal reflects on the weight to be given their opinions. In

another setting, as in *State v. Nesbitt,* 23 Or App 202, 541 P2d 1055 (1975), Sup Ct *review denied* (1976), the lack of cooperation may be more significant.

██ Another assignment asserts error because of the admission in evidence of hospital records relating to the care and treatment appellant received when she was confined in the Psychiatric Crisis Unit, University of Oregon Medical School in Portland pending a delay in hearing. We read *State v. O'Neill,* 274 Or 59, 545 P2d 97 (1976), to bar the admission of the hospital records offered in this case.

Reversed and remanded.

**TANZER, J.,** specially concurring.

I specially concur on the same grounds as are set out in my specially concurring opinion in *State v. Heintz,* 26 Or App 935, 554 P2d 556 (September 27, 1976).