*[949]
 
 RICHARDSON, J.
 

 Appellant seeks reversal of an order of commitment entered by the circuit court after a hearing finding him mentally ill beyond a reasonable doubt under ORS ch 426. The court ordered appellant committed to the Mental Health Division for a period not to exceed 180 days. There are three assignments of error. Appellant’s first assignment contends the evidence did not establish that he was mentally ill beyond a reasonable doubt because there was insufficient evidence he was dangerous to himself or others at the time of the hearing. We agree. Since this is dispositive of the appeal it is unnecessary to discuss the remaining claims of error. We review de novo,
 
 State v. O’Neill,
 
 274 Or 59, 545 P2d 97 (1976).
 

 Appellant, nineteen years of age, was arrested on April 22,1977, for trespassing and was incarcerated in the Multnomah County jail. Jay Sadler, an officer in the jail, had occasion to observe appellant during the next three days. Appellant was disoriented, uncooperative and unable to understand the directives of the officers trying to process him. He rambled on about the love he felt for everyone and an appointment he had with Jesus. He was observed to lie on the floor of his cell in the shape of a cross and stare at the ceiling. On the third day after his arrest appellant removed all his clothes and left them on the floor outside his isolation cell. He was later found to have incurred a laceration on his forehead and several bumps as a result of striking his head on the floor of his cell. He was taken to the hospital for treatment of the wounds. Officer Sadler signed the Notification of Mental Illness pursuant to ORS 426.070 on April 25.
 

 On April 27, a hearing was commenced to determine whether appellant was a "mentally ill person” as defined in ORS 426.005(2):
 
 [1]
 

 
 *[950]
 
 " 'Mentally ill person’ means a person who, because of a mental disorder, is either:
 

 "(a) Dangerous to himself or others; or
 

 "(b) Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety.”
 

 The court rescheduled the hearing for May 2, after counsel requested a continuance, at which time Officer Sadler, appellant, appellant’s father and girlfriend, and two physicians appointed by the court, ORS 426.110, testified.
 

 The determination as to whether a person is dangerous beyond a reasonable doubt must focus on his or her condition at the time of the hearing.
 
 State v. Daulton,
 
 30 Or App 217, 566 P2d 555 (1977);
 
 State v. Alexander, 26
 
 Or App 943, 554 P2d 524 (1976);
 
 State v. G.,
 
 26 Or App 197, 552 P2d 574, Sup Ct
 
 review denied
 
 (1976). The actions and statements of a person alleged to be mentally ill which occur prior to the hearing are, of course, probative as to the person’s present mental condition. But a mere recitation of past acts, in the absence of a showing that such clearly forms the foundation for a prediction of future dangerousness, cannot serve as the basis for a finding that one is a mentally ill person pursuant to ORS 426.005(2).
 
 [2]
 
 In
 
 State v. Alexander, supra,
 
 we referred to the kind of evidence that was to be expected at commitment hearings:
 

 "* * * [W]hat will be offered is testimony by lay witnesses of an individual’s past conduct coupled with an interpretation of that conduct and of their observations by the professional examiners (ORS 426.110 and 426.120) and a prediction of not only his future conduct but also the effects which that conduct will have on himself and those around him. * * *” 26 Or App at 946.
 

 
 *[951]
 
 We do not mean to imply that the only material evidence of mental illness would be expert testimony. It is conceivable that lay testimony or a clear logical inference from the observable condition of the alleged mentally ill person could form the nexus between the condition of the person and the final conclusion he is mentally ill as defined in ORS 426.005.
 

 The record of the present proceedings has neither predictions as to the future conduct of this young man, nor testimony which establishes beyond a reasonable doubt that he was dangerous to himself or others at the time of the May 2 hearing. For this reason we must reverse the order of commitment.
 

 There is little question that appellant’s behavior at the time of his arrest and while in jail was symptomatic of a mental disorder. Oregon’s commitment statutes require more, however, than simply a finding of mental illness in the clinical sense. Appellant did indicate that his head wounds received in isolation on April 25 were an attempt at suicide, but there is strong evidence in the record that the act was the result of having taken the hallucinogen, LSD.
 
 [3]
 
 Both his girlfriend and his father testified he had never tried to harm himself before. Although appellant testified to being depressed during the previous month, his erratic behavior at the time of his arrest was uncharacteristic according to the two witnesses. There is no testimony by the physicians indicating that the appellant’s self-destructive behavior would likely be repeated.
 
 [4]
 
 Appellant’s behavior between the April 27 and May 2 hearings had stabilized considerably, a fact that did not go unnoticed by the court:
 

 
 *[952]
 
 "THE COURT: I have no question but that your condition has improved a great deal over what it was a few days ago. The problem is, it hasn’t improved sufficiently that you are capable of making your own decisions today. You have a personality characteristic, it appears to me. You do not listen to what other people want you to do, at least that is what I see here today in terms of particularly Miss Bills’ testimony, your father’s testimony, your repeated interruptions here today. You are going to do your own thing when you want to do it. Where you belong is in a hospital and you have told me that you don’t want to go to a hospital.”
 

 A finding that appellant had a "personality characteristic” or even that he was not capable of making his own decisions cannot substitute for evidence justifying a prediction that this individual will be dangerous to himself or others in the future so as to relate his condition to the definition of a mentally ill person under ORS 426.005(2)(a).
 

 The evidence and the expert analysis of this evidence at the May 2 hearing is simply insufficient for us to hold that appellant is dangerous beyond a reasonable doubt.
 

 Reversed.
 

 [1]
 

 The state does not contend that appellant is unable to provide for his basic personal needs under ORS 426.005(2)(b).
 

 [2]
 

 See State v. Nesbitt,
 
 23 Or App 202, 541 P2d 1055 (1975), Sup Ct
 
 review denied
 
 (1976), and Kilpatrick,
 
 Oregon’s New Mental Commitment Statute: The Expanded Responsibilities Of Courts and Counsel,
 
 53 Or L Rev 245 (1974), for a discussion of the procedures delineated by ORS ch 426.
 

 [3]
 

 At the start of the hearing appellant explained his bizarre behavior as being induced by his taking LSD. Later he denied having taken the drug, but after his girlfriend testified that he had taken LSD, he reaffirmed his original statement. Appellant’s father also testified that prior to the arrest his son told him he had taken the drug.
 

 [4]
 

 One of the physicians appeared to focus on ORS 426.005(2)(b) in his report, inability to care for basic needs, instead of dangerousness under (2)(a), upon which the state seeks to uphold the commitment.