In the Matter of Charles Nelson,
Alleged to be a Mentally Ill Person.
STATE OF OREGON, *Respondent,*
*v.*
CHARLES NELSON, *Appellant.*
(No. 44667, CA 9806)
580 P2d 590

Charles D. Bates, Portland, argued the cause and filed the brief for appellant.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on

the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Appellant seeks reversal of an order of commitment finding him mentally ill beyond a reasonable doubt under ORS ch 426. The court ordered appellant committed to the Mental Health Division for a period not to exceed 180 days. Appellant's first assignment of error contends the evidence did not establish that he was mentally ill beyond a reasonable doubt because there was insufficient evidence he was dangerous to himself or others at the time of the hearing. We agree. Since this is dispositive of the appeal it is unnecessary to discuss appellant's second assignment of error.

On November 19, 1977, appellant telephoned the Gresham Police Department and requested that they provide him with a bus to take him to Seattle. When Sgt. Summers, who spoke with appellant, informed him that a bus could not be provided, appellant stated he would not be responsible for his actions. Appellant stated that he was part of some sort of interplanetary system that placed him above the law. Following the phone conversation Sgt. Summers contacted appellant at a Gresham shopping center. There the appellant indicated that the would not go with the officers to the hospital. The only gestures he made at this time were to put his finger near the officer's face. Appellant also indicated that when he went he would take 217 million people with him. It was never clear what appellant meant by "went." Appellant showed the officers a Washington identification card and indicated that he was working in Portland at a company, which he named. The officers then took him to the hospital.

Appellant did not display any suicidal tendencies or talk of suicide. According to Sgt. Summers appellant did not appear to be under the influence of drugs or alcohol. Appellant was dressed appropriately for the weather. Sgt. Summers testified that appellant was hostile but all of his hostility was verbal.

A commitment hearing was held on November 23, 1977, to determine whether appellant was mentally

[ 59 ]

ill.[1] Sgt. Summers and appellant testified, and the court received reports from two court-appointed examiners, Dr. Stolzberg and Dr. Badger. At the hearing appellant indicated he had the power to move things without touching them, although no display of the power was offered. He also gave a Portland address where he could stay. Under Dr. Stolzberg's questioning, appellant was not shown to have heard voices when no one was talking. Appellant was oriented as to the date and year of the hearing, knew the names of the United States Presidents back to Richard Nixon, was able to subtract serial sevens from one hundred, and was able to explain one of two short proverbs, with the answer to the second one left ambiguous. Appellant knew that his behavior made people uneasy.

Dr. Badger's examination of appellant elicited that appellant knew he had been classified as mentally ill, and that he was angry at "Justice." Appellant knew the purpose of the commitment hearing; he knew that the examining experts' opinions were determinative of whether he was to be committed. Appellant stated that he did not want to harm anybody, nor destroy anything.

Drs. Badger and Stolzberg both found appellant to be mentally ill and recommended involuntary hospitalization. Their reports made reference to statements made by appellant to Gresham police officers. The examiners found the appellant to be "angry," "curt," "aggressive" and "hostile" in his *verbal* behavior.

---

[1] ORS 426.005(2) provides:

"As used in ORS 426.005 to 426.390, unless the context requires otherwise:

"* * * * *

"(2) 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a) Dangerous to himself or others; or

"(b) Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

Toward the end of the hearing appellant became agitated and abusive, stating to the judge at one point:

"You are lucky I don't punch you. You are just lucky that I don't take this whole room apart atomically and put it back the way I want to."

The court found appellant to have a mental disorder and because of that disorder was unable to provide for his basic needs. The state concedes that the evidence was not sufficient to support a finding that appellant was unable to take care of his basic needs. However, the state now argues that the evidence was sufficient to establish beyond a reasonable doubt that appellant was dangerous to himself or others.

The determination as to whether a person is dangerous beyond a reasonable doubt must focus on his or her condition at the time of the hearing. *State v. Lucas,* 31 Or App 947, 571 P2d 1275 (1977). While evidence of past acts is probative as to a person's present mental condition, there must be a showing that such acts clearly form the foundation for a prediction of future dangerousness before a court can find that one is a mentally ill person under ORS 426.005(2). *State v. Lucas, supra* at 950.

The record in this proceeding contains only one reference to appellant's future conduct, and that is a statement by Dr. Stolzberg that appellant "is in danger due to his threatening hostile behavior." The only hostile behavior appellant has manifested is verbal, however, and no threats other than ambiguous statements are disclosed in the record. While it may be that defendant's manner makes people uncomfortable and could possibly make others angry, we conclude that the evidence and expert analysis of this evidence at the hearing are simply insufficient for us to hold that appellant is dangerous beyond a reasonable doubt.

Reversed.

**TANZER, J.,** dissenting.

I would affirm the trial court judgment. The transcript reflects hallucinatory and hostile, threatening behavior. The examining psychologist concluded that the petitioner had a thought disorder of significant proportion and that there was significant evidence of delusional content, based upon which he recommended hospitalization. The examining psychiatrist recommended hospitalization on the basis of her conclusion that petitioner suffered from:

"Psychosis with delusional state
Differential 1. Affective Disorder, manic phase
            2. Schizophrenia, paranoid type
[Patient] is unable to care for himself & is in danger due to his threatening hostile behavior."

I am particularly unwilling to set aside an order of involuntary commitment by the trial judge who not only had this expert evidence before him, but in addition had the opportunity to perceive at firsthand the petitioner's appearance and conduct. We do the petitioner no favor by holding that he should have been put back on the streets.