Argued June 23, reversed September 18, 1978

In the Matter of Timothy Allen Fry,
Alleged to be a Mentally Ill Person.
STATE OF OREGON, *Respondent,*
*v.*
TIMOTHY ALLEN FRY, *Appellant.*
(No. 2896, CA 10333)
584 P2d 354

Duane J. McCabe, Coos County Public Defender, North Bend, argued the cause and filed the brief for appellant.

James C. Rhodes, Deputy Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

ROBERTS, J.

## ROBERTS, J.

Appellant seeks reversal of the court's determination that he is a mentally ill person. The sole issue presented is whether the evidence is sufficient to conclude that the appellant was a mentally ill person as defined by ORS 426.005(2)(a).[1]

In *State v. Alexander,* 26 Or App 943, 554 P2d 524 (1976), we noted the necessity of making a case by case review in determining whether the individual was, in fact, mentally ill beyond a reasonable doubt. ORS 426.130.[2] We further noted the difficulty in attempting to apply the reasonable doubt standard because of the necessity of predicting that the allegedly mentally ill person would engage in dangerous conduct.

In *Alexander,* we stated:

" '* * * [T]he legislature clearly has rejected the traditional philosophy applied to mental commitment proceedings of "when in doubt, commit." Under the new statute, if any reasonable doubt exists, an allegedly mentally ill person may not be committed.' " *State v. Alexander, supra* 26 Or App at 947. [Quoting 53 Or L Rev 262-63 (1973-74)].

In reviewing de novo, we must determine whether the reasonable doubt standard has been met.

Appellant, aged 21, testified he heard voices talking to him from television and radio. He admitted thinking about killing himself and others, but he denied that he ever would. Appellant further admitted having a conflict between God and Satan going on in

---

[1] ORS 426.005(2)(a) provides:

"(2) 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a) Dangerous to himself or others * * *"

[2] ORS 426.130 provides in pertinent part:

"After hearing all of the evidence, and reviewing the findings of the examining persons, the court shall determine whether the person is mentally ill. If in the opinion of the court the person is not mentally ill, he shall be discharged forthwith. If in the opinion of the court the person is mentally ill *beyond a reasonable doubt,* the court may order as follows:" (Emphasis supplied.)

his mind, and he felt that he was God and had special powers. The voices troubling appellant were becoming worse, and they led appellant to conclude that he could not leave the courthouse and live. He also believed people were out to get him, and was sometimes afraid of people.

Appellant's mother, who initiated the proceedings, stated that appellant's discussions about harming himself were "just talk." Although appellant had thought of killing himself with a gun, he neither owned a gun nor knew where he could acquire one. She also testified that appellant had no enemies that she knew of. Appellant was incarcerated for driving while his driver's license was suspended. He was designated a jail trustee during which time he showed no aggression toward jailers or prisoners. He had performed his trustee job well until a nervous problem occurred. He was then treated with medication and began acting "a lot better now than he was." While in jail, he was never observed to exhibit dangerous tendencies toward other people. According to his supervising police officer who testified in his behalf, appellant was well liked by his fellow trustees. Appellant had not threatened or quarreled with either of the initiating petitioners or anyone else within the recent past.

The two examining mental health professionals agreed that the appellant had a mental disease, but disagreed as to whether or not he was dangerous to himself or others. The examiner who favored involuntary commitment, a medical doctor serving as the county health officer, was not particularly certain regarding appellant's actual dangerousness. The examiner observed:

"Well, I can say this, that *he is not a danger to others as he is now* but unless he gets proper care and proper medication and gets the situation under control, he is going to be worse and that worse *could* result in some voice saying 'Look, go get the Judge or get [me]' or something and they often will do it." (Emphasis supplied.)

The other examiner, a psychologist, concluded that appellant was suffering from a mental illness, but not to such a degree that he was dangerous to himself or others.

We have stated in *State v. Lucas,* 31 Or App 947, 950, 571 P2d 1275 (1977), "a mere recitation of past acts, in the absence of a showing that such clearly forms the foundation for a prediction of future dangerousness, cannot serve as the basis for finding that one is a mentally ill person pursuant to ORS 426.005(2)." (Footnote omitted.)

Apprehensions and speculation alone are not enough to fulfill the requirements of the statute. The record reflects that the one professional examiner to conclude that appellant should be committed predicated his opinion on his hypothesis that appellant "could" become dangerous to others. Such conjecture falls short of the reasonable certainty of predicted dangerous behavior that we required in *Alexander* and reaffirmed in *Lucas.*

Reversed.

**JOHNSON, J.,** specially concurring.

In *State v. Heintz,* 26 Or App 935, 939-40, 554 P2d 556 (1976), Judge Tanzer stated in a specially concurring opinion:

> "The standard of proof beyond reasonable doubt, borrowed from criminal procedure, is inappropriate in a mental hearing where the issue is the degree of probability of future possibilities rather than the existence of a past fact. Yet the legislature has directed that we apply that standard and, however difficult it may be to apply, we are bound to and will find ways to make it workable.

I concur with that statement except for the comment that we "will find ways to make it workable." In this case, we are confronted with a person who suffers from mental illness and in all probability is a danger to himself or to others. If we applied a preponderance of the evidence test, I am certain that a majority of this

court would agree with me that the trial court's order committing this individual should be affirmed.[1] We are compelled to reverse because the legislature in its wisdom requires that the state prove a probability as to the future beyond a reasonable doubt.

[1] Furthermore, if the test were a preponderance of the evidence, I am certain that this court would have affirmed orders of commitment in previous cases wherein the orders were reversed for failure of the state to meet its burden of proof beyond a reasonable doubt. Since the legislature adopted the stricter burden of proof in 1974, Oregon Laws 1973, ch 838, § 12, this court has heard, in addition to the three cases decided today, twenty-three appeals from orders of commitment under ORS chapter 426. In five of those cases, the orders were reversed for procedural errors. *See State v. Carney,* 29 Or App 291, 562 P2d 1248 (1977); *State v. Hynes,* 27 Or App 37, 554 P2d 1030 *rev den* (1977); *State v. English,* 26 Or App 957, 554 P2d 201 (1976); *State v. May,* 26 Or App 953, 554 P2d 201 (1976); *State v. Anderson,* 21 Or App 263, 534 P2d 1159 (1975). In only six cases where the issue was the sufficiency of the evidence was the order affirmed. *See State v. Brooks,* 35 Or App 347, 581 P2d 134 (1978); *State v. Watkins,* 35 Or App 87, 581 P2d 90 (1978); *State v. Hart,* 32 Or App 573, 574 P2d 702 (1978); *State v. Daulton,* 30 Or App 217, 566 P2d 555 (1977); *State v. G,* 26 Or App 197, 552 P2d 574 *rev den* (1976); *State v. Nesbitt,* 23 Or App 202, 541 P2d 1055 *rev den* (1976); *State v. O'Neill,* 21 Or App 710, 536 P2d 552 (1975). (This court's opinion in *O'Neill* was reversed by the Supreme Court in *State v. O'Neill,* 274 Or 59, 545 P2d 97 (1976).) In the remaining ten cases, the orders of commitment were reversed for failure of the state to meet its burden of proof. *See State v. Nelson,* 35 Or App 57, 580 P2d 590 (1978); *State v. Conrad,* 34 Or App 119, 578 P2d 1 (1978); *State v. Corrigan,* 32 Or App 577, 574 P2d 707 (1978); *State v. Lucas,* 31 Or App 947, 571 P2d 1275 (1977); *State v. Paul,* 28 Or App 479, 559 P2d 535 (1977); *State v. Benton,* 27 Or App 259, 555 P2d 468 (1976); *State v. Haskell,* 27 Or App 261, 555 P2d 798 (1976); *State v. Alexander,* 26 Or App 943, 554 P2d 524 (1976); *State v. Heintz,* 26 Or App 935, 554 P2d 556 (1976); *State v. Stephens,* 23 Or App 257, 541 P2d 1052 (1975). In at least some of these cases, it is likely that the orders of commitment would have been affirmed had the burden of proof been a preponderance of the evidence. *See e.g., State v. Alexander, State v. Heintz,* and *State v. Corrigan,* all *supra.*