Argued and submitted May 19, affirmed June 23,
reconsideration denied August 7,
petition for review denied September 3, 1980 (289 Or 588)

In the Matter of Joseph M. Matthews
Alleged to Be a Mentally Ill Person
STATE OF OREGON,
*Respondent,*

*v.*

JOSEPH M. MATTHEWS,
*Appellant.*

(No. 57-79-11052, CA 16455)

613 P2d 88

Ross M. Shepard, Assistant Director, Public Defender Services of Lane County, Inc., Eugene, argued the cause and filed the brief for appellant.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is an appeal from an order of commitment finding appellant to be a mentally ill person as defined in ORS 426.005(2). The sole issue on appeal is whether an alleged mentally ill person has a right to remain silent in a civil commitment proceeding. The trial court concluded that the Fifth Amendment privilege did not apply and directed appellant to speak. We affirm.

Initially the state contends that, because appellant did not refuse to testify, he did not preserve his constitutional objection. We disagree. Appellant informed the court of his desire to remain silent. He testified only after the court directed him to do so. In light of the trial court's order, appellant's Fifth Amendment claim is properly before us.

An involuntary civil commitment is a serious deprivation of liberty. It is well established that such proceedings must comport with due process. *O'Conner v. Donaldson,* 422 US 563, 95 S Ct 2486, 45 L Ed 2d 396 (1975); *State v. Mills,* 36 Or App 727, 585 P2d 1143 (1978), *rev den* 285 Or 195 (1979). Just what process is due, however, is another question. The United States Supreme Court has never drawn the line between the rights that must be afforded to civilly committed persons and those which need not be.

The Fifth Amendment to the United States Constitution states that no person "shall be compelled in any criminal case to be a witness against himself." The privilege against self incrimination has been extended to "any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory * * *" wherein the individual may reasonably apprehend that his statements may "be used in a criminal prosecution or which could lead to other evidence that might be so used." *Murphy v. Waterfront Commission of New York,* 378 US 52, 94, 84 S Ct 1594, 12 L Ed 2d 678 (1964). The availability of the privilege does not

depend "upon the type of proceeding in which it is invoked but upon the nature of the statement or admission and the exposure it invites." *In re Gault,* 387 US 1, 49, 87 S Ct 1428, 18 L Ed 2d 527 (1967).

It is clear that an alleged mentally ill person can assert his Fifth Amendment privilege in a civil commitment proceeding whenever his testimony might implicate him in a criminal matter. We have recognized this right in *State v. Troupe,* 36 Or App 875, 586 P2d 95 (1978), *rev den* 286 Or 521 (1979). Appellant, however, would have us go further and hold that an alleged mentally ill person can refuse to talk whenever his statements, whether in a psychiatric interview or in court, may be used as a basis for his civil commitment.

The United States Supreme Court has never ruled on this issue. In *McNeil v. Patuxent Institution Director,* 407 US 245, 250, 92 S Ct 2083, 32 L Ed 2d 719 (1972), the court was presented with the issue but declined to reach it. In a concurring opinion, Justice Douglas concluded that the Fifth Amendment privilege did apply to any statements that might serve as a basis for commitment because "there is harm and self-incrimination whenever there is a deprivation of liberty; and there is such a deprivation * * * if a person is held against his will." *Id.,* at 257. Other courts considering the matter have reached differing results. In *Lessard v. Schmidt,* 349 F Supp 1078, 1101, (ED Wis 1972), *vacated and remanded on other grounds,* 414 US 473 (1974), *on remand* 379 F Supp 1376 (ED Wis 1974), *vacated and remanded on other grounds,* 421 US 957 (1975), *on remand* 413 F Supp 1318 (ED Wis 1976), the court, relying on Justice Douglas' concurring opinion in *McNeil,* concluded that the state could not commit an individual on the basis of his statements to examining psychiatrists or others, in the absence of a showing that the statements were made voluntarily after the individual was given notice of the fact that his statements might contribute to his

commitment and that he was not obliged to speak. *See also Suzuki v. Quisenberry,* 411 F Supp 1113 (D Hawaii 1976), *as amended Suzuki v. Alba,* 438 F Supp 1106 (D Hawaii 1977); and *Commonweath ex rel Finken v. Roop,* 234 Pa. Super. 155, 339 A2d 764 (1975), *cert den* 424 US 960 (1976). Other courts have limited the right in civil commitment proceedings to its traditional reach, *viz.,* where the testimony might contribute to a criminal prosecution. *See French v. Blackburn,* 428 F Supp 1351 (MD N. C. 1977), *aff'd* ___ US ___, 99 S Ct 3091 L Ed 2nd (1979), and *Lynch v. Baxley,* 386 F Supp 378 (MD Ala. 1974).

Appellant, as did Justice Douglas in *McNeil,* relies to a great extent on the Supreme Court's decision in *In Re Gault, supra.* In that case, the Court held that juveniles are protected against self-incrimination in delinquency proceedings. However, that decision is limited. It applies only to proceedings where the child is charged with committing a delinquent act which could result in his commitment to a state institution. The right is applicable not only because of the threatened loss of liberty but because of the possibility of transfer to adult court and to insure that confessions are not coerced. Recently, in *Addington v. Texas,* 441 US 418, 99 S Ct 1804, 60 L Ed 2d 323 (1979), the Court, in considering the burden of proof required in involuntary commitment proceedings, distinguished those proceedings from delinquency proceedings. It noted that in civil commitment cases, unlike delinquency cases, the state's power is not exercised in a punitive sense. *Id.,* at 428. Moreover, the inquiry in the two proceedings is different. In delinquency proceedings, "the basic issue is a straightforward factual question—did the accused commit the act alleged." In commitment cases, on the other hand whether the person is mentally ill and in need of confined treatment "turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists." *Id.,* at 429.

There being no binding precedent which is in point, we decide for ourselves whether due process requires that alleged mentally ill persons be afforded the right to remain silent in involuntary commitment proceedings whenever their testimony might be used as a basis for commitment. In determining the specifics of due process in any given situation three factors must be considered: first, the private interest that will be affected by the state's action; second, the state's interest; and, finally, the risk of an erroneous decision if the procedure is not applied. *Addington v. Texas, supra,* 441 US 425; *see also Matthews v. Eldridge,* 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976).

The interest of the individual in this case is high: the threatened loss of liberty. Moreover, involuntary commitment may also "engender adverse social consequences to the individual" in the form of "stigma" or otherwise. *Addington v. Texas, supra,* 441 US 426. The state also has a significant interest.

> "The state has a legitimate interest under its parens patriae powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has the authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill." *Addington v. Texas, supra,* 441 US 426; *see also O'Conner v. Donaldson, supra,* 422 US at 575; *State v. O'Neill,* 274 Or 59, 545 P2d 97 (1976).

In *State v. O'Neill, supra,* 274 Or at 72, the court held that *Miranda* warnings are not required before an individual is examined by psychiatrists or others pursuant to an involuntary commitment proceeding. The court stated that "this is not a criminal proceeding and *Miranda* warnings, if required, could effectively frustrate the finding of mental health or illness." *Ibid.* Precisely the same thing may be said of the present case. In Oregon, an individual can be involuntarily committed only if his condition *at the time of the hearing* demonstrates that he is a "mentally ill person" as that term is defined in ORS 426.005(2). *State v.*

*Allmendinger,* 36 Or App 381, 383, 584 P2d 773 (1978); *State v. Lucas,* 31 Or App 947, 950, 571 P2d 1275 (1977). The best way to ascertain an individual's condition at the time of the hearing is to question him and observe his demeanor. It would be extremely difficult to commit persons in need of help if they refused to talk.

We are not unmindful of the significant private interest involved and the risk of erroneous deprivation of this interest. However, we are satisfied that the significant procedural and substantive safeguards which are presently afforded allegedly mentally ill persons in commitment hearings[1] amply assure a fair hearing and a correct result. *See State v. O'Neill, supra,* 274 Or 68, 69; *State v. Allmendinger, supra,* 36 Or App 383; *State v. Troupe, supra,* 36 Or App at 882; *State v. Fry,* 36 Or App 297, 584 P2d 354 (1978); *State v. Nelson,* 35 Or App 57, 580 P2d 590 (1978); *State v. Brooks,* 35 or App 347, 581 P2d 134 (1978); *State v. Alexander,* 26 Or App 943, 554 P2d 524 (1976).

Affirmed.

---

[1] In Oregon, an alleged mentally ill person has the following rights in a civil commitment proceeding:

1.  He must be found to have a mental disorder and be either dangerous or unable to provide for his basic personal needs or receive that care from others. ORS 426.005(2). This must be proven by clear and convincing evidence. ORS 426.130.

2.  Right to a hearing and opportunity to be heard. ORS 426.070-426.130.

3.  Notice of the hearing and the grounds thereof, and of his rights. ORS 426.070(3), 426.090.

4.  Right to cross-examine witnesses. ORS 426.095.

5.  Right to present evidence in his own behalf and subpoena witnesses. ORS 426.100(1).

6.  Right to counsel, appointed if necessary. ORS 426.100(1), (3).

7.  Right to a postponement. ORS 426.100(5).

8.  Right to request that an additional examining physician of his own choice (besides the two appointed by the court) be appointed to examine him. ORS 426.110.

9. Right to receive a copy of the investigation report and any treatment report prior to the hearing. ORS 426.070(4), 426.075.

10. The investigation report can only be introduced in evidence with the express consent of the person. ORS 426.095.

11. Record of the proceedings. ORS 426.160.

12. Right to appointed counsel on appeal. ORS 426.135.

There is no right to trial by jury, *State v. Mills,* 36 Or App 727, 585 P2d 1143, *rev den* 285 Or 195 (1978), and the alleged mentally ill person is not entitled to *Miranda* warnings before being examined. *State v. O'Neill,* 274 Or 59, 545 P2d 97 (1976).