Argued and submitted June 9, reversed July 28, 1980

In the Matter of Shirley Arnston,
alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

SHIRLEY ARNSTON,
*Appellant.*

(No. 46927, CA 16083)

614 P2d 1214

Vince Salvi, Metropolitan Public Defender, Portland, argued the cause and filed the brief for appellant.

James E. Mountain, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him

on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

**ROBERTS, J.**

Appellant seeks reversal of an order committing her to the custody of the Mental Health Division. Our review is de novo. *State v. Nesbitt,* 23 Or App 202, 541 P2d 1055 (1975). We must determine whether there is clear and convincing evidence that appellant is unable to provide for her basic personal needs and is not receiving such care as is necessary for her health and safety pursuant to ORS 426.005(2).[1]

The record reveals that at the time of the hearing, appellant was well fed and able to maintain her personal hygiene. She was able to cook for herself and attend to housekeeping chores. She did not have a job and she indicated she felt she was presently unable to work, but she had income as a welfare recipient and received food stamps. There is no question that appellant is obsessed with what she considers to be a physical need to have breast implants removed. She maintains the discomfort prevents her from working, but she believed that if the operation were performed she could find work.

Appellant was residing in a home owned by her former husband's relatives at the time of the hearing. Appellant had not paid rent, nor had she been pressed to do so by the owners since March, 1972. Prior to the hearing, appellant had been notified to vacate the house by August 15, 1979, but continued to reside on the premises. There was no testimony that any further action was taken actually to evict appellant or that any was presently being considered. Nevertheless, appellant had packed her belongings. One witness testified that appellant had attempted to find

---

[1] ORS 426.005(2) states:

" 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a)  Dangerous to himself or others; or

"(b)  Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

alternate housing on at least one occasion and had displayed some confusion when doing so. Appellant testified she had tentatively found alternative housing but it would not be available immediately.

There is no evidence to support the proposition that appellant's basic needs were unmet except in the housing situation. In *State v. Alexander,* 26 Or App 943, 554 P2d 524 (1976), this court enunciated a requirement for determining a person's ability to provide for one's basic needs. We stated: "* * * The ability of one to care for [oneself] requires a finding of existing conditions. * * *" 26 Or App at 946. From our review of the evidence, we conclude that the conditions existing at the time of the hearing did not clearly and convincingly show that defendant was unable to provide for her basic needs including her need for housing.

The notice given to appellant to vacate the premises indicates that the housing previously provided was not presently being provided to her willingly by others. One of the owners, appellant's former mother-in-law, testified:

"* * * We asked her that she move.

"[State's counsel]: When was that?

"That was — I think my husband sent a letter, saying we wanted the house back in August."

Since the owners were under no obligation to provide appellant with housing and were unwilling to continue to provide housing, our focus must be on whether defendant herself was able to provide for her housing.

Appellant was taking care of her housing needs simply by not vacating the premises. Appellant indicated she was residing presently in the residence and testified that she would be returning to it if she were released after the hearing. Appellant's failure to vacate the premises is not in itself enough to indicate that she was unable to provide for her needs. The historical relationship between appellant and the

owners of the residence, and the acquiescence of the owners in allowing her to have possession of the house prevents us from concluding that appellant's failure to move indicates an inability to provide herself with housing. Furthermore, appellant appeared to be aware that the premises would not be at her disposal indefinitely. She packed up her things, and the testimony indicates she looked for alternative housing. There is testimony that on at least one occasion she was confused and that her confusion may have interfered with obtaining an apartment.[2] Nevertheless, appellant testified as follows concerning her search for housing:

"* * * at the time I applied for the apartment, I didn't really even know yet if I needed a one-bedroom or a two-bedroom until last Monday when I was in court. And the boys are now in their father's custody. I now know I need a one-bedroom. * * *"

At the time of the hearing, appellant had a place to stay and she was cognizant of the necessity to move in the near future. She was also cognizant of the factors involved in moving, and she appreciated what was appropriate housing under her circumstances. The evidence did not clearly and convincingly indicate that appellant could not act upon her understanding.[3] Consequently, we conclude that there was insufficient evidence to find that defendant was unable to provide for her basic needs.

Reversed.

---

[2] Appellant's sister testified that approximately three or four months prior to the hearing she had accompanied defendant on a search for an apartment. The witness recalled the event as follows:

"When the landlord or manager opened the door, [appellant] started stuttering and sort of rubbed her head and said, 'Do you have group sessions here?' And he said, 'I beg your pardon?' Then she said, 'Well, how do I find an apartment?' And he said, 'Well, first you ask me if I have something available and then we take it from there.' "

[3] Of the three examining physicians, two stated it was their belief that appellant could not meet her basic needs while the other believed that appellant "is able to care for herself." Of the two favoring commitment, one stated, upon examination by counsel, that he wished "there were a third category the court could decide on."