In the Matter of Steven Gregory Adair,
Alleged to be a Mentally Ill Person.
STATE OF OREGON,
*Respondent,*
*v.*
STEVEN GREGORY ADAIR,
*Appellant.*

(No. 14883, CA 14376)

601 P2d 830

Charles N. Hilke, Salem, argued the cause and submitted the brief for appellant.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

LEE, J.

## LEE, J.

Defendant challenges his involuntary commitment under ORS chapter 426. He assigns as error: (1) the trial court's denial of his motion for a continuance pursuant to ORS 426.100(5); (2) the finding beyond a reasonable doubt that he is a mentally ill person; and (3) the propriety of the involuntary commitment order.

Defendant, an 18-year-old male, has a ninth grade education. He suffers from epilepsy caused by an automobile accident when he was six years old. On April 21, 1979, and again on April 23, 1979, defendant attempted suicide by taking an overdose of his seizure control medication.

On April 30, 1979, a hearing was commenced to determine whether defendant was a mentally ill person as defined in ORS 426.005(2).[1] Defendant, two court-appointed examiners, and a mental health worker testified. Defendant stated that his epilepsy is a major cause of his depression. "I hold it against myself," he said. The record reveals that defendant has serious problems getting along with his father, who has refused to allow him to live at home. He has been living as an itinerant with no place of abode and has not been taking his epilepsy medication properly. Approximately two months before his suicide attempts, defendant contacted a mental health clinic regarding his depression, but was not given medication for depression due to a conflict with his epilepsy prescription. He stopped going to the clinic because he felt it would not help. He also testified that he would voluntarily stay at Oregon State Hospital (OSH) and enroll in a rehabilitation program. The record reveals that in the past defendant voluntarily committed himself

---

[1] ORS 426.005(2) provides:

" 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a) Dangerous to himself or others; or

"(b) Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

to OSH numerous times but had not stayed long enough to complete testing.

A Marion County Mental Health Clinic worker, Mrs. Golick, testified that after his first suicide attempt, defendant indicated that he would return to his home area and voluntarily become involved in a mental health program, but he failed to do so. She further testified after defendant's second suicide attempt he stated that he took twenty pills on the first attempt, thirty on the second, and "next time I'll take forty." She stated that some members of the staff at OSH feel that defendant is manipulative and does not belong there. She described defendant as being "grossly depressed" and stated that presently he would not be responsible enough on his own to obtain the treatment he needs.

During the early stages of the hearing, defendant requested a 72-hour continuance in order to present as a witness, Mr. Goldsberry, an employee from OSH.

"THE COURT: Can you tell me what Mr. Goldsberry would tell us—do you have any idea?

"MR. ADAIR: He probably would wait for the doctors to ask, you know, questions and he will just tell the truth, and he told me that if the doctor asked him he would—what he thought about my being mentally ill, he would say no, that he thinks that I just was—I think myself that I am, but he doesn't think I am.

"THE COURT: Well, I think under the circumstances, let's continue and then if later, if we feel that Mr. Goldsberry should be brought down, we could contact him.

"[COUNSEL FOR APPELLANT]: I have no objection."

Toward the end of the proceedings, when the court was expressing its concern to defendant regarding his mental state, defendant again requested a continuance.

"[COUNSEL FOR APPELLANT]: Your Honor, Mr. Adair has indicated that he would request a continuance for a period of time, up to 72 hours, for

me to talk to and possibly produce witnesses on his behalf from the state hospital to testify that in their opinion he is not mentally ill and should not be there.

"THE COURT: Well, you see they may testify to that, but it's—it's up to these two doctors at this hearing, they—it's merely their opinion.

"[COUNSEL FOR APPELLANT]: I realize that.

"THE COURT: I think Mrs. Golick has certainly told us that some of the people out there definitely feel that he should not be at the state hospital.

"I most certainly believe you, [defendant]. I'm sure that there are people out there who have told you that you shouldn't be out there, that you're just using it for a place for room and board—we know that is— we know that they may have said it * * *."

Both examiners found that defendant had a mental disorder, was dangerous to himself and unable to provide for his basic personal needs. The opinion of both examiners was that defendant would not cooperate with and benefit from a program of voluntary treatment, but should be committed.

The court found beyond a reasonable doubt defendant was a mentally ill person and was dangerous to himself. The court ordered commitment.

ORS 426.100(5) provides:

"If the allegedly mentally ill person, the legal counsel or guardian, or the two examiners request, the court *may*, for good cause, postpone the hearing for not more than 72 hours in order to allow preparation for the hearing. * * *" (Emphasis supplied.)

Defendant maintains that due to the speed with which commitment proceedings are held, the right to present witnesses is meaningless without the ability to secure continuances; therefore, the word "may" in ORS 426.100(5) should be read as "shall". He contends that once good cause is shown, the trial court is required to grant a continuance.

■ Formerly, this statute provided that in the event a continuance was requested, the court *"shall"* postpone

the hearing; however, the legislature in 1975 deleted the word "shall" and amended the statute to read "the court *may*, for good cause, postpone the hearing * * *." Oregon Laws 1975, ch 690, § 6, p 1841. Thus, the legislature evinced a clear intent to make granting a continuance discretionary, not mandatory as defendant argues.

■ Defendant further contends that even if ORS 426.100(5) is considered discretionary, the trial court abused its discretion in failing to grant a continuance. We note that after defendant's first request for a continuance, his attorney expressly stated he had "no objection" to the court's decision to proceed with the hearing and, if necessary later, to call the requested witness. Counsel further stated "the opinion has been expressed anyway for the record." Through the testimony of defendant and Golick, the court was aware that certain staff members at OSH felt defendant should not be placed in the hospital. Thus, the evidence defendant sought to introduce was already before the court, and it was reasonable for the court to decline to hear testimony on that point. This was not an abuse of discretion.

■ Defendant also contends that the trial court erred in finding him a mentally ill person in order to force treatment of his epilepsy. Defendant misunderstands the decision of the trial court. It is clear from the record that defendant's epilepsy causes his depression which in turn gives rise to his attempts at suicide. Defendant was committed because his depression made him suicidal. Beyond a reasonable doubt, defendant is suffering from a mental disorder and is dangerous to himself. ORS 426.005(2)(a); *see State v. Allmendinger*, 36 Or App 381, 584 P2d 773 (1978).

Finally, defendant contends that ORS 426.130[2] requires the court to apply the least restrictive alterna-

---

[2] At the time of the hearing, ORS 426.130 provided:

"After hearing all of the evidence, and reviewing the findings of the examining persons, the court shall determine whether the person is

tive in the treatment of a mentally ill person. He maintains that the court should have allowed voluntary treatment or conditional release instead of ordering involuntary commitment. The statute uses the permissive term "may". Both examiners and the mental health worker considered the alternatives to involuntary commitment, but rejected them as unworkable. The trial court agreed with their recommendation for involuntary commitment. We also agree.

Affirmed.

mentally ill. If in the opinion of the court the person is not mentally ill, he shall be discharged forthwith. If in the opinion of the court the person is *mentally ill beyond a reasonable doubt,* the court *may* order as follows:

"(1) If the mentally ill person is willing and able to participate in treatment on a voluntary basis, and the court finds that he will probably do so, the court shall order the release of the individual and dismiss the case.

"(2) If the legal guardian, relative or friend of the mentally ill person requests that he be allowed to care for the mentally ill person during the period of commitment not to exceed 180 days in a place satisfactory to the judge, and shows that he is able to care for the mentally ill person and that there are adequate financial resources available for the care of the mentally ill person, the court may order that the mentally ill person be conditionally released and placed in his care and custody. The order may be revoked and the mentally ill person committed to the division for the balance of the 180-day commitment period whenever, in the opinion of the court, it is in the best interest of the mentally ill person.

"(3) If in the opinion of the court voluntary treatment or conditional release is not in the best interest of the mentally ill person, the court may order the commitment of the individual to the division for treatment. The commitment shall be for a period of time not to exceed 180 days." (Emphasis supplied.)

Effective October 3, 1979, ORS 426.130 was amended only in regard to the burden of proof. It now provides that a court must find a person mentally ill based upon *clear and convincing evidence.*