Argued and submitted June 27, affirmed August 4, 1980

In the Matter of Randolph Sterzicg,
alleged to be a mentally ill person.

### STATE OF OREGON,
*Respondent,*

*v.*

### RANDOLPH STERZICG,
*Appellant.*

(CA 17526)

614 P2d 631

James M. Gillis, Newport, argued the cause for appellant. With him on the brief was Litchfield, Macpherson, Carstens & Gillis, Newport.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. On the brief

were James M. Brown, Attorney General, Walter L. Barrie, Solicitor General, and Karen H. Green, Assistant Attorney General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

Appellant challenges his involuntary commitment under ORS 426.130.[1] He claims that the court erred in committing him without clear and convincing evidence and that the record did not support commitment for in-patient treatment when other alternatives may have been sufficiently effective and less restrictive of his liberty. We review *de novo. State v. O'Neill,* 274 Or 59, 61 n 3, 545 P2d 97 (1976). Because the state has not met the burden of showing by clear and convincing evidence that the appellant is mentally ill, we reverse, making it unnecessary to discuss the second issue.

After an incident at a mental health clinic where he had become verbally abusive, appellant was given a commitment hearing in Salem, but he was

---

[1] ORS 426.130:

"After hearing all of the evidence, and reviewing the findings of the examining persons, the court shall determine whether the person is mentally ill. If in the opinion of the court the person is not mentally ill, he shall be discharged forthwith. If, based upon clear and convincing evidence, it is the opinion of the court that the person is mentally ill, the court may order as follow:

"(1) If the mentally ill person is willing and able to participate in treatment on a voluntary basis, and the court finds that he will probably do so, the court shall order the release of the individual and dismiss the case.

"(2) If the legal guardian, relative or friend of the mentally ill person requests that he be allowed to care for the mentally ill person during the period of commitment not to exceed 180 days in a place satisfactory to the judge, and shows that he is able to care for the mentally ill person and that there are adequate financial resources available for the care of the mentally ill person, the court may order that the mentally ill person be conditionally released and placed in his care and custody. The order may be revoked and the mentally ill person committed to the division for the balance of the 180-day commitment period whenever, in the opinion of the court, it is in the best interest of the mentally ill person.

"(3) If in the opinion of the court voluntary treatment or conditional release is not in the best interest of the mentally ill person, the court may order the commitment of the individual to the division for treatment. The commitment shall be for a period of time not to exceed 180 days."

[623]

found not to be mentally ill. After his release in Salem, he traveled to Lincoln County, where, after drinking beer with a friend, he slept until the following afternoon. When he awoke, he and his pet "Red Dog" traveled downtown in his pickup truck to a drive-in restaurant to get something to eat. A city police dispatcher saw him driving and reported that he was driving "erratically." Sometime thereafter, a state trooper arrived and appellant was taken to the Lincoln County Jail. There was evidence that he was upset with what he believed was an unjustified arrest and was worried about "Red Dog," who had been left at the drive-in.

At the jail, appellant was interviewed by a social worker from the Lincoln County Mental Health Clinic, after a notification of mental illness had been signed pursuant to ORS 426.070 by the jailer. The notice reported that while in jail the appellant was hearing voices and issuing verbal threats. At one point during the interview he walked toward a doorway in which the social worker was standing, causing the social worker to move out of the way, but no physical contact was made. Two days after his arrest, a hearing was held in circuit court to determine if the appellant was "mentally ill" as defined by ORS 426.005(2).[2]

Appellant has a history of mental disorders. He has been hospitalized several times and was at the relevant time here under medication to control a disorder which causes him to hear voices. At one time in the past those voices had told appellant to commit suicide, but he ignored the suggestion. There is no evidence in the record of any act of the appellant which could be considered dangerous to himself or to others.[3]

---

[2] ORS 426.005(2):

"(2) 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a)  Dangerous to himself or others; or

"(b)  Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

[3] The state does not contend that appellant is not able to take care of himself. The evidence shows that he had a job and was getting proper attention for his illness at a local mental health clinic.

Recently the legislature changed the standard of proof in commitment cases from the "beyond a reasonable doubt" to "clear and convincing evidence." Or Laws 1979, ch 408, § 3; ORS 426.130. In *Cook v. Michael,* 214 Or 513, 526, 330 P2d 1026 (1958), the Supreme Court declared that "proof by clear and convincing evidence means that the truth of the facts asserted is highly probable." Not only was there no evidence of a high probability that the appellant was in fact dangerous to himself or others, but the evidence indicated that the medication program which he was on was effective. He concedes that he suffers from a mental disorder, but that alone is insufficient to constitute "mentally ill" as defined by the statute. *See State v. Lucas,* 31 Or App 947, 571 P2d 1275 (1977); *State v. Allmendinger,* 36 Or App 381, 383, 584 P2d 773 (1978).

Reversed.