Argued and submitted October 8, reversed December 8, 1982

In the Matter of
Arthur W. Fletcher,
alleged to be a mentally ill person.

## STATE OF OREGON,
*Respondent,*

*v.*

## ARTHUR W. FLETCHER,
*Appellant.*

(No. I-285, CA A24456)

654 P2d 1121

Keith Burns, Portland, argued the cause and filed the brief for appellant.

Daryl D. Wilson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

Appellant claims that the trial court erred when it found him to be a mentally ill person as defined by ORS 426.005(2). He was conditionally released pursuant to ORS 426.130(2) and placed in the care and custody of a relative, on the condition that he participate in appropriate treatment of his manic depressive condition. The dispositive issue is whether there was clear and convincing evidence that appellant is mentally ill. We review *de novo, State v. O'Neill,* 274 Or 59, 61, 545 P2d 97 (1976), and reverse.[1]

A mentally ill person is defined by ORS 426.005 (2):

" 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a) Dangerous to himself or others; or

"(b) Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

Proof that a person is mentally ill must be by "clear and convincing evidence." ORS 426.130. That standard of proof means "that the truth of the facts asserted is highly probable." *Cook v. Michael,* 214 Or 513, 527, 330 P2d 1026 (1958); *State v. Sterzicg,* 47 Or App 621, 625, 614 P2d 631 (1980).

Appellant's wife and his brother-in-law initiated the proceedings. Although we do not know appellant's age, he apparently is receiving social security. It appears that he and his wife live in Hood River County and have owned and operated an orchard there for several years. The orchard business is profitable, and appellant is financially sound. In the past, he had taken a prescribed antidepressant (Lithium) but had recently refused to take any more medication. He is subject to intense mood swings when he stops taking his medicine. During low periods, his ability to make decisions appears to be impaired. During high periods, he was described as being generous and expansive and

---

[1] It is unnecessary to discuss the other assignment of error, which concerns the failure to provide a copy of the investigation report 24 hours before the hearing. ORS 426.070(4).

prone to buying sprees. At the conclusion of the hearing, the two court-appointed examiners[2] were of the opinion that appellant suffers from a manic-depressive mental disorder and as a result is dangerous to himself and others and unable to provide for his basic needs.

■ There is no clear and convincing evidence that appellant is mentally ill as defined by the statute. Evidence was offered by appellant, his wife, his brother-in-law, a Ms. Hall, who is an employe of the "Center for Living," and the examiners. Appellant and his wife denied that appellant had ever expressed or demonstrated any self-destructive propensities. There was no evidence to the contrary. Appellant's wife was of the opinion that he frequently drove too fast and darted back and forth in traffic. On two occasions, he drank too much. She questioned his irregular sleeping hours and the fact that he had purchased things that they did not need. The brother-in-law described appellant as "a very intelligent person." He had observed appellant's mood swings. During high periods, "he has his mind made up," and during low periods, "it does seem to be hard for him to function." The brother-in-law did not testify to any incidents or overt acts to support these conclusions.

Ms. Hall, who conducted the precommitment investigation, pursuant to ORS 426.070, believed that appellant was making decisions that could lead to financial setbacks and damaged personal relationships, which created a "potential" for self-destruction. She believed that appellant exhibited impaired business judgment because, while he was briefly hospitalized pending the hearing, he purchased a television set and had it delivered to his room. He told the nursing staff that he would leave the television set if they were good to him. He also expressed some interest in donating a dialysis machine. There is no evidence that appellant was not financially able to do what he proposed to do.

Another incident that Ms. Hall viewed as an example of impaired judgment concerned a hitchhiker that appellant picked up and befriended. Sometime later, he gave the stranger, whom he knew to be an ex-convict,

---

[2] ORS 426.110 provides for the appointment of the examiners.

access to his home without telling his wife and made arrangements at a local store to let the stranger charge some "utensils." During this brief acquaintance, appellant entrusted the stranger with his car. Both the stranger and the car left town and have not been heard from since. Appellant's attitude and generosity toward others is best summed up by appellant himself. One examiner advised appellant that "you are so forgiving and so open at this point that that's potentially hazardous to you." Appellant's response was:

"That's been my whole life. You can ask my wife about that, my neighbors. I'll never outgrow that. I hope I don't. I might give something away once in a while, but I've learned a lot more about people."

This case is not unlike others where plausible suppositions and conclusions are not supported by clear and convincing evidence. *See State v. Howell*, 53 Or App 611, 633 P2d 14 (1981); *State v. Cristofferson*, 47 Or App 1087, 615 P2d 1152 (1980); *see also State v. Conrad*, 34 Or App 119, 578 P2d 1, *rev den* 283 Or 235 (1978). "Apprehensions and speculation alone are not enough to fulfill the requirements of the statute." *State v. Fry*, 36 Or App 297, 301, 584 P2d 354 (1978). In *State v. Alexander*, 26 Or App 943, 947, 554 P2d 524 (1976), we said:

"What is needed, then, is for the professional examiners to fully explain the facts and observations that led them to a conclusion. A statement by the examining doctors, as in the instant case for example, that the person has a 'flat' appearance is meaningless without explanation. And, if the examiner merely states a conclusion that the person being tested is dangerous to himself or others, it is not adequate." 26 Or App at 943.

Appellant was described as being dangerous to others, because he had made threats on two occasions. On one occasion, he reportedly told a cannery worker over the phone that if the worker would not work as appellant desired, appellant would "mop up the floor with his rear-end." On another occasion, appellant told his wife, after learning she had seen an attorney about initiating these proceedings, that if appellant ever learned the lawyer's name he would "really fix him." There was no evidence that appellant ever repeated the statements or that he ever

attempted to carry out the threats. One witness said that appellant had no "mal-intent" toward anyone, and appellant's wife said that he is not the sort of person who would ever intentionally harm anyone. In *State v. Jepson,* 48 Or App 411, 416, 617 P2d 284 (1980), we said:

> "Past verbal acts, while probative, must be supported by evidence that they clearly form a foundation for predicting future dangerousness."

The reports of ill-temper do not establish such a foundation. *See State v. Sterzicg, supra; see also State v. Alexander, supra.* That evidence, whether viewed alone or in conjunction with the other evidence, does not establish that it is "highly probable" that appellant is dangerous. *Cook v. Michael, supra.* There was no serious evidence that appellant was unable to care for his basic needs.

This proceeding was initiated, because appellant refused to take the prescribed medication to moderate his mood swings. He refused the medication, because he wanted to feel in control of himself. He prefers to work on his problems without drugs, and he is willing to cooperate in counseling. Although appellant may need to cooperate fully in the treatment of his illness, we must recognize the clear distinction between a mental disorder in the clinical sense and a mental disorder that requires committment. Appellant was not shown by clear and convincing evidence to be mentally ill within the meaning of ORS 426.005(2).

Reversed.