Argued and submitted October 21, 1983, affirmed March 21, 1984

In the Matter of John Kerrigan, alleged
to be a mentally ill person.

## STATE OF OREGON,
*Respondent,*

*v.*

## JOHN KERRIGAN,
*Appellant.*

(16907; CA A27776)

678 P2d 271

Steven L. Krasik, Salem, argued the cause and filed the brief for appellant.

Christine A. Chute, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Christine L. Dickey, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals an order of commitment. We review *de novo, State v. O'Neill,* 274 Or 59, 545 P2d 97 (1976), to determine whether there was "clear and convincing evidence" that defendant was "mentally ill" and was properly committed. ORS 426.130. We affirm.

"Clear and convincing" means the "truth of the facts asserted is highly probable." *State v. Sterzicg,* 47 Or App 621, 614 P2d 631 (1980). Under ORS 426.005(2), a "mentally ill person" is:

"* * * a person who, because of a mental disorder, is either:

"(a)   Dangerous to himself or others; or

"(b)   Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

At the time of the commitment hearing, defendant had been voluntarily admitted to Oregon State Hospital. He had previously been a patient in the hospital after parole from Oregon State Prison and had returned to the hospital shortly after he was conditionally released to a group home in Eugene. He testified that he asked to be readmitted because he was "somewhat disoriented the way society had changed over the years [he] had been locked up," had had trouble finding work in Eugene and wanted a situation in which he could line up a job before he was released. He also stated that he wanted to learn to live in society without the prescribed medication he had been taking, because he could not afford it, could not find the drugstores in Eugene and wanted to experiment doing without the drug under controlled circumstances. At the time of the hearing he was refusing medication while at the state hospital.

Defendant first contends that there is not clear and convincing evidence that he was mentally ill as defined in ORS 426.005(2). A state investigator interviewed defendant and described him as "very paranoid," "evasive," "delusional" and a "very scared, frightened person." He was examined by two psychiatrists, who concluded that he was suffering from a mental disorder and was unable to care for himself or live in the community. Without detailing the evidence presented, we conclude that there is clear and convincing evidence that

defendant suffers from a mental disorder because of which he is unable to care for himself.

In his second assignment of error, defendant argues that the state has misused the commitment procedures. His brief states:

"* * * The hospital here is attempting to compel Mr. Kerrigan to take medication by first committing him in spite of his willingness to accept voluntary treatment sans forced medication. Once Mr. Kerrigan becomes court-committed the hospital may exercise the provisions of OAR 309-114-000 through OAR 309-114-025 which could administratively empower the Mental Health Division to compel Mr. Kerrigan to undergo drug therapy in opposition to his desires. By refusing to accept Mr. Kerrigan as a voluntary patient the hospital is in effect attempting to compel the court to circumvent the letter and spirit of the mental health commitment statutes regarding voluntary treatment."

Defendant's concern appears to be this: Mental Health Division regulations (OAR 309-114-000 *et seq*) permit forced medication of committed persons under certain circumstances. The hospital has refused to take defendant on a voluntary basis, and that refusal has served as part of the basis for committing him involuntarily, even though under the statutory scheme the possibility of voluntary treatment can be taken into consideration in a commitment proceeding. ORS 426.130(1). Once defendant is committed, the hospital can then force medication under the administrative rules, thereby frustrating defendant's desire for assistance in learning to live without the medication. Most of defendant's argument appears to be with the statutory and regulatory scheme rather than with its application here. However, defendant has not directly challenged the statute or regulations.

■ Part of defendant's argument is that the court failed to consider ORS 426.130, which provides:

"* * * If, based upon clear and convincing evidence, it is the opinion of the court that the person is mentally ill, the court may order as follows:

"(1) If the mentally ill person is willing and able to participate in treatment on a voluntary basis, and the court finds that he will probably do so, the court shall order the release of the individual and dismiss the case.

"* * * * *"

If defendant's argument is that the court should not have ordered commitment because he had submitted himself for voluntary treatment, that argument is answered in *State v. Adair,* 42 Or App 675, 601 P2d 830. (1979). There we stressed that ORS 426.130 uses the permissive term "may" with respect to consideration of voluntary treatment in making a commitment order and rejected the argument that the court is required to apply the least restrictive alternative in the treatment of a mentally ill person. A court is not forbidden to commit a person simply because he has submitted himself voluntarily to treatment.

There is a basis in the record to support a conclusion that defendant was not "able" to participate in treatment on a voluntary basis. One examining physician stated:

"* * * [I]t appears that he has a recent history of episodes of making short-term commitments to a program, becoming confused, threatened and not persevering in a program, and I think some more structure than that would be necessary for him at this time."

■  Defendant appears to argue that the hospital's refusal to provide treatment on a voluntary basis should not be a factor in the court's determination whether or not commitment is indicated and that the hospital should not be permitted to refuse to accept a patient on a voluntary basis in order to use the involuntary commitment procedures to force medication. *See* OAR 309-114-000 *et seq.* One examining physician testified that part of his reason for recommending commitment was the hospital's unwillingness to admit defendant on a voluntary basis. Because we find that there is a sufficient basis in the record to support a conclusion that defendant's voluntary participation in treatment would be inadequate, regardless of the hospital's attitude, we need not consider the appropriateness of considering the hospital's refusal of voluntary treatment in ordering commitment.

■  Defendant also argues that a desire to force him to take medication would be an improper motivation for commitment. However, the law permits commitment if defendant's condition meets the definition of "mentally ill person" expressed in ORS 426.005(2), regardless of the motivation.

Affirmed.