Submitted on record and briefs October 5, reversed December 23, 1992

In the Matter of
Ralph Randy Stanley,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

## RALPH RANDY STANLEY,
*Appellant.*

(M92-2-2; CA A73525)

843 P2d 1018

Arthur P. Stangell, Oregon City, argued the cause and filed the brief for appellant.

Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, Michael D. Reynolds, Assistant Attorney General, and John Payne, Certified Law Student, Salem, filed the brief for respondent.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Riggs, J., dissenting.

## EDMONDS, J.

Appellant appeals an order finding him to be a mentally ill person and committing him to the Mental Health Division for treatment. The order was based on a finding that he is unable to provide for his basic needs and is not receiving such care as is necessary for his health or safety. ORS 426.005(2)(b).[1] Appellant contends that the finding was not supported by clear and convincing evidence, as required by ORS 426.130. We review *de novo, State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976), and reverse.

Appellant was hospitalized in Chicago in November, 1991, for a mental disorder and substance abuse. On January 30, 1992, he was transferred to Dammasch State Hospital in Oregon by the State of Illinois, because Oregon is his "home State." Five days after appellant's arrival, a hearing was held. At the hearing, a physician said that appellant suffers from schizophrenia and that his psychosis impairs his judgment to the extent that he could be taken advantage of by others. The witness testified:

"Q. Doctor, did I understand you to say that he is not dangerous to himself or to others?

"A. At this point he's not dangerous to himself. * * *

---

[1] ORS 426.005(2) provides:

"As used in ORS 425.005 to 426.390, unless the context requires otherwise:
"* * * * *

"(2) 'Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:

"(a) Dangerous to self or others.

"(b) Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety.

"(c) A person who:

"(A) Is chronically mentally ill, as defined in ORS 246.495;

"(B) Within the previous three years, has twice been placed in a hospital or approved inpatient facility by the division under ORS 426.060;

"(C) Is exhibiting symptoms or behavior substantially similar to those that preceded and led to one or more of the hospitalizations or inpatient placements referred to in subparagraph (B) of this paragraph; and

"(D) Unless treated, will continue, to a reasonable medical probability, to physically or mentally deteriorate so that the person will become a person described under either or both paragraph (a) or (b) of this subsection."

"Q. There's been no fights or harm to others on the ward since he's been admitted?

"A. No."

Appellant testified about his plans for the future:

"Q. And if you were released today, where would you go?

"A. I would go to Burnside Projects; they have a doctor there, and a psychologist, and the social worker. * * *

"Q. Okay. Mr. Stanley, after you went to Burnside Projects, where would you actually live?

"A. I would go to a hotel on Burnside, and I would get an apartment, let's say like for a week, and then I would call long distance. * * * I would have some more money wired to me * * *.

"Q. And how would you eat?

"A. Well, there's lots of rescue missions and stuff like that; it might not be the best, but I've grown up without a mother and without a father * * *.

"Q. Okay. Mr. Stanley, do you need to take medication?

"A. I believe I could get medicine from the outpatient clinic, from Burnside even to take the medicine. Now, I would take it * * *."

ORS 426.130 empowers a court to commit a person for treatment if the court finds that the person is mentally ill based upon clear and convincing evidence. Apprehensions and speculation alone are not enough to find a person in need of treatment. *State v. Fry*, 36 Or App 297, 301, 584 P2d 354 (1978). There must be facts and observations that lead to such a conclusion. *State v. Alexander*, 26 Or App 943, 947, 554 P2d 524 (1976). The trial judge based his finding that appellant is mentally ill on the medical examiners' conclusions that appellant could not care for himself. "The ability of one to care for himself requires a finding of *existing* conditions." *State v. Alexander, supra*, 26 Or App at 946. (Emphasis supplied.) Whether a person is capable of caring for his basic needs depends on "the capacity of the individual to survive, either through his own resources or with the help of family or friends." *State v. Bunting*, 112 Or App 143, 145, 826 P2d 1060 (1992).

Appellant's treating physician testified that appellant lives a homeless lifestyle, but "he survives somehow." Although appellant's thinking may be "disorganized" at times, the record reflects that he has a plan for his future care. He has thought about where he will live, eat and get his medication. He receives Social Security and has family in the state. *See State v. Johnson*, 117 Or App 237, 843 P2d 985 (1992). The medical examiners apparently relied on appellant's past hospitalizations. Although earlier commitments are relevant to determining the extent of a mental disorder and to predict future conduct, *State v. Watkins*, 35 Or App 87, 90, 581 P2d 90 (1978), the evidence must be "highly probable" that the person will not be able to care for himself in the future. *State v. Fletcher*, 60 Or App 623, 625, 654 P2d 1121 (1982). In the light of the evidence about appellant's ability to provide for his needs at the time, we hold that the evidence does not clearly and convincingly meet the standard required by ORS 426.005(2)(b).

Reversed.

**RIGGS, J.,** dissenting.

On *de novo* review, I would find that the state proved by clear and convincing evidence that appellant cannot provide for his basic needs. ORS 426.005(2)(b); ORS 426.130(b).

Both medical examiners at the commitment hearing agreed that appellant is currently incapable of caring for himself. Appellant's treating physician described appellant's disorganized and delusional thinking, which she felt would impair his ability to survive safely in his homeless lifestyle. Her testimony that appellant lacked insight into his illness and would not take medication was supported by appellant's own testimony that he is not mentally ill.

Additional facts in the record support the medical examiners' conclusion that appellant is unable to care for himself. He has been hospitalized more than 28 times in 14 years and has a consistently poor record of following treatment plans after release. The pre-commitment report characterized his family support as weak. Those facts, coupled with his recent delusional thinking and his present inability to organize his thoughts for more than a few minutes, make it

highly probable that appellant cannot provide for his personal safety or follow through with his plans for independent living.

I dissent.