Argued and submitted September 11, reversed October 11, 1995

In the Matter of Kimberly Kuenzi,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

## KIMBERLY KUENZI,
*Appellant.*

(9502-61773; CA A87782)

903 P2d 911

Gregg T. Sylvester argued the cause and filed the brief for appellant.

Erika L. Hadlock, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Appellant appeals an order finding her to be a mentally ill person and committing her to the Mental Health Division for treatment. The order is based on a trial court finding that appellant is unable to provide for her basic needs and is not receiving such care as is necessary for her health or safety.[1] ORS 426.005(1)(d)(B).[2] Appellant contends that the finding is not supported by clear and convincing evidence as required by ORS 426.130. We review *de novo, State v. O'Neill*, 274 Or 59, 545 P2d 97 (1976), and reverse.

Appellant is 36 years old and has no prior history of mental illness. As of February 1995, she lived alone in an apartment in Tigard and worked in a print shop. The business at the print shop was seasonal, and as a result, appellant occasionally suffered financial difficulties.

In February, appellant advertised for a roommate to help share her apartment expenses. Eventually, she found a male roommate and allowed him to move in. She testified that their living situation "wasn't very good" and caused her stress. On February 23, appellant and her roommate had an altercation over the use of her telephone. Apparently, appellant hit the roommate with the telephone or the telephone cord, and the roommate called the police. The police arrived at the apartment and took appellant into custody. Later that day, she was placed in the Portland Adventist Medical Center (PAMC) and remained there approximately two weeks until her commitment hearing on March 9. Appellant testified that during her stay at PAMC, she was administered one dose of Proloxin, which made her very sick. As a result, she refused to take any more of that medication. By the time of her hearing, appellant had been evicted from her apartment because of failure to pay rent.

---

[1] The trial court also found that appellant is dangerous to herself pursuant to ORS 426.005(1)(d)(A). The state concedes that that finding is not supported by the evidence.

[2] ORS 426.005(1)(d)(B) provides:

"(d) 'Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:

"* * * * *

"(B) Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety."

At the commitment hearing, the trial court determined that appellant suffers from a mental disorder, is unable to provide for her basic personal needs and was not receiving such care as is necessary for her health or safety. On appeal, appellant argues that she has a job to which she can return, that she has available funds on which to live and that she plans to live at the Ritz Hotel in Portland. The state contends that she cannot provide for her basic needs for medication and shelter.

 Basic needs are those things necessary to sustain life. *State v. Brungard*, 101 Or App 67, 71, 789 P2d 683, *mod* 102 Or App 509, 794 P2d 1257 (1990), *rev den* 311 Or 427 (1991). We look at *existing* conditions in order to determine if an individual can meet his or her basic needs. *State v. Stanley*, 117 Or App 327, 843 P2d 1018 (1992). In *State v. Bunting*, 112 Or App 143, 826 P2d 1060 (1992), we said:

> "The legislature's 'basic needs' commitment standard focuses on the capacity of the individual to survive, either through his own resources or with the help of family or friends.
>
> "* * * * *
>
> "A person is subject to a 'basic needs' commitment under ORS 426.005(2)(b) if clear and convincing evidence demonstrates that, due to a mental disorder, there is a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs and is not receiving care necessary for health or safety." 112 Or App at 145-46.

The failure to take medication alone does not indicate that an individual is unable to care for his or her own personal needs. *State v. Garibbo*, 77 Or App 321, 323, 713 P2d 671 (1986); *see also State v. Fletcher*, 60 Or App 623, 628, 654 P2d 1121 (1982).

In this case, two medical examiners, Dr. McCubbin and McWhirter, concluded that appellant is unable to provide for her basic personal needs. At the hearing, McCubbin testified:

> "But I think she had the indications of paranoid personality with some slight evidence of thought disorder. She's not a typical mental patient, but she is typical to me of paranoid personalities. They do function well at some times. They're

very difficult to commit in some cases because their behavior is generally not dangerous to other people or to themselves. But that's why I marked that she's unable to care for her basic personal needs.

"I think she will continue to have characteristics of not getting along with other people because of being suspicious and because of poor interpersonal relationships. I think that can be helped with medication. I think that perhaps Prolixin might not be the proper medication. But, on the other hand, it may have been just her reaction to the first dose.

"* * * * *

"This is — there's something going on with this young woman that is quite different. For example, if she was schizophrenic I think it would have emerged at a much earlier time. And — but I still believe that there's a mental disorder there. I think her denial is her own defense system, which is healthy, in a way. But I believe she's going to not function well in the community, and needs supervision, and she would not comply with voluntary outpatient treatment, by her own admission, because they will undoubtedly recommend medication."

McWhirter testified:

"* * * I do think she has a mental disorder. I do believe that she has not only the delusions, but I think there's a possibility of hallucinations. And I do feel that more evaluation is necessary, and that there's a real possibility that the medication could help.

"One of the things I think that's kind of sad is that this apparently has been going on for several years untreated, and the longer she goes untreated, the more deteriorated her personal life is going to be. And it's reached an acute phase right now in terms of her coming to the attention of the community, and it sounds like there were some peripheral problems earlier, but it's acute now. And if she does not get treatment I feel she'll deteriorate further. And I do feel there's a possibility that treatment could be very helpful to her. But it most likely will include medication."

■ None of the oral or written conclusions of the medical examiners provides clear and convincing evidence that appellant is unable to care for her basic personal needs, nor is there sufficient evidence that her refusal to take medication will result in her inability to meet her basic personal needs. Although appellant's mother testified that appellant has

expressed unwarranted agitation toward people, is under financial and emotional stress that is "a little bit overwhelming to her" and that her problem with organization has recently gotten a "little bit" worse, there is nothing in the mother's testimony that indicates appellant is unable to care for her basic physical needs either. The need for a roommate no longer exists. Appellant testified about her ability to care for herself:

> "And I need a better job than what I have. But I do — have been working steady for at least two years, and before that I had a small child and was only working part time then. But I've been working for three to four years and supporting myself and taking care of myself the entire time. No one else has done that for me. During the last two years I've taken good care of myself.
>
> "\* \* \* \* \*
>
> "If I cannot take care of myself, how is it that I have a place, I have the job. You're welcome to call my employer. And that's — and I have my counseling, too, set up. If I can't take care of myself — I've already done all that. So — I have a place to stay and I have money. I was just behind on my rent. And I just need a better job. But I do have — the employment I have is — does keep me busy. It's not quite enough. It doesn't mean that I can't take care of myself."

We agree. Appellant has offered uncontroverted evidence that she has employment and plans to live at a local hotel. The state has not presented clear and convincing evidence demonstrating that, due to a mental disorder, there is a likelihood that appellant is unable to provide for her basic personal needs. Although appellant may be suffering from a mental disorder, and may not have harmonious relationships with others, that alone is not enough to subject her to involuntary commitment. *Garibbo*, 77 Or App at 324.

Reversed.